## GARDNER ET AL. v. BOARD OF COMMISSIONERS OF KNOX COUNTY.

[No. 20,040. Filed June 23, 1903.]

COUNTIES.—*Burial of Soldier.*—*Power of Trustee.*—Where a township trustee in the exercise of his judgment, and without fraud or collusion, employs an undertaker to bury the body of an honorably discharged soldier, under the provision of §§8165j, 8165k Burns 1901, the undertaker is not required to look beyond the power of the trustee to make the contract, and, if he proceeds in good faith to perform the service, he becomes entitled to recover of the county the reasonable value or contract price of his services and furnishings, not exceeding $50; and neither the county commissioners nor the circuit court has the authority to inquire into the financial condition of the soldier at the time of his death, nor into the condition in which he left his family.

From Knox Circuit Court; *O. H. Cobb*, Judge.

Claim by Dexter Gardner and others for the burial of a soldier. The claim was disallowed by the board of commissioners, and an appeal was taken to the circuit court. From the judgment of the circuit court in overruling demurrer to an answer by commissioners, claimants appeal. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*C. E. Dailey* and *H. R. Lewis*, for appellants.

HADLEY, J.—The record discloses that September 12, 1900, Patrick Grogan, an ex-Union soldier, and resident of Vincennes township, Knox county, Indiana, died; and on the same day the trustee of said township issued to the appellants, as undertakers, the following order: "Burial Order. Trustee's office, Vincs. tp., Knox Co. Sep-

tember 12, 1900. To D. Gardner & Son: Please furnish coffin and bury Patrick Grogan. Sex, m.; age, 74; color, w.; nationality, Irish; residence, city; and charge same to Knox county, returning this as a voucher to the board of commissioners. James E. Kackley, trustee." Said trustee also reported in writing to the board of commissioners of the county that he had, pursuant to law, caused the body of Patrick Grogan, an ex-Union soldier, to be interred at county expense, the said Grogan not having left means sufficient to defray the necessary expenses of said burial without distressing his family; setting forth in said report the name, date of death, occupation, age, rank, service of the soldier, and an itemized statement of the expense incurred by the burial, amounting to $50. February 27, 1901, appellants filed in the auditor's office their claim against the county for $50 for said burial, and, on March 8th, the claim was disallowed. Appellants appealed to the circuit court, where the commissioners filed an answer in five paragraphs. A demurrer was sustained to the first, third, fourth, and fifth, and overruled to the second. The claimants refusing to plead further, and electing to stand by their demurrer to the second paragraph of answer, judgment was rendered against them for costs, and they appeal.

The second paragraph is in these words: "That said Patrick Grogan was possessed of real property, uncncumbered, at the time of his death, of the value of $2,000, and of personal property of the value of $500, and that the payment of said funeral expenses by his estate or administrator would not distress his family." The only assignment is the action of the court in holding that this answer presents a good defense to the claim. The appellee has filed no brief. We must assume, because no other appears, that appellee rests its defense solely upon the ground that it had the right to show at the trial, eight months after the body was buried, that the case was not within the provisions of the statute, in that the estate of the sol-

dier was sufficient to have met the expense of the burial without distressing his family.

All the legislation upon the subject, beginning in 1889 (Acts 1889, p. 139) and again in two acts in 1899 (Acts 1899, p. 397; Acts 1899, p. 406), was considered, and in substance reënacted in more concise and certain terms in 1901 (Acts 1901, p. 323, §§34, 35, §§8165j, 8165k Burns 1901), and which, as pertinent to this case, provides that it shall be the duty of the overseers of the poor (township trustees) in their respective townships to look after and cause to be interred by the undertaker designated by the family, in a decent and respectable manner, in any cemetery other than those used exclusively for the pauper dead, at an expense not to exceed $50, the body of any honorably discharged soldier who may have at the time served as a regular or volunteer soldier in the army of the United States, who may have died a resident of this State, not leaving means sufficient to defray the necessary funeral expenses, or whose immediate family is in such indigent circumstances that its members would be distressed by the expense of such burial. "The records of such burials shall not be kept in the pauper books of the township; but such burials shall be promptly reported by the overseers of the poor to the board of county commissioners and shall be allowed and paid out of the county treasury as other legal charges against the county are allowed and paid." §8165k, *supra*. It is manifest from the character of this legislation that the legislature was moved by the patriotic purpose of recognizing, on behalf of the State, that that class of citizens who had borne the hardships and perils of the public defense, is entitled to a decent and respectable burial, without oppression to their families, and without having cast upon them the implication of being paupers. The object of the statute is patriotic and benevolent as well as prudential, and invokes at our hands a liberal construction. The claim being statutory, we must look alone to the statute

for the right, and for the duties of public officers in rela-
tion thereto. The duty imposed upon the trustee, to look
after and cause to be interred, carries with it the power
to employ an undertaker to perform the burial. Whether
the particular subject comes within the terms of the statute,
is not left to the county commissioners, or to anyone else
than the township trustee. He must exercise his best judg-
ment, and, when he has decided, and employed an under-
taker, if the employment is free from fraud or collusion,
it will be conclusive against the county. The undertaker
is not required to look beyond the power of the trustee to
make the contract, and, if he proceeds in good faith to
perform the service, he becomes entitled to recover of the
county the reasonable value or contract price of his serv-
ices and furnishings, not exceeding $50. *Board, etc.,* v.
*Hinson,* 29 Ind. App. 189.

It would speak little for the magnanimity and benefac-
tions of the State, if after such a burial, and only the sound
judgment of the trustee is involved, courts are to be in-
vaded, juries impaneled, and the bereaved friends of the
deceased soldier called as witnesses to determine whether
the discretion of the trustee was well founded. We said
in *Morgan County* v. *Seaton,* 122 Ind. 521, 525: "It has
been held, and with eminent propriety, that where the over-
seer of the poor, in the exercise of his discretion, decided
that an individual was a poor person, and entitled to relief
under the poor laws of the State, and, in pursuance of such
decision, employed a physician to render medical aid, his
judgment was conclusive on the county unless connivance
or fraud could be shown." See, also, *Board, etc.,* v. *Hol-
man,* 34 Ind. 256; *Conner* v. *Board, etc.,* 57 Ind. 15;
*Board, etc.,* v. *Seaton,* 90 Ind. 158; *Board, etc.,* v. *Jen-
nings,* 104 Ind. 108; *Board, etc.,* v. *Harlem,* 108 Ind.
164. The principle involved here is precisely the same.
It follows that neither the commissioners nor the circuit
court had power or authority to inquire into the financial

condition of the soldier at the time of his death, nor into the condition in which he left his family. The answer therefore was insufficient.

Judgment reversed, and cause remanded, with instructions to sustain the demurrer to the second paragraph of answer.